CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

AUG 10 2009

JOHN F CORCORAN, CLERK
BY: /s/ K. Bolton
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| PAUL W. MERRIGAN, ) | Case No. 5:08cv00081 |
| ) | |
| *Plaintiff* ) | REPORT AND |
| v. ) | RECOMMENDATION |
| ) | |
| MICHAEL J. ASTRUE, ) | By:  Hon. James G. Welsh |
| Commissioner of Social Security, ) | U. S. Magistrate Judge |
| ) | |
| *Defendant* ) | |

      The plaintiff, Paul W. Merrigan, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on February 2, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Both parties have moved for summary judgment and submitted supporting memoranda. By order of referral entered February 3, 2009 this case is before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). No written request was made for oral argument,[1] and the case is now before the undersigned for report and recommended disposition.

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for reversal and remand of the final administrative decision be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying the plaintiff's DIB application.

I. **Case History**

On November 9, 2005 the plaintiff filled his application for a period of disability and disability insurance benefits ("DIB"), alleging that he became disabled on January 1, 2003 due to fetal alcohol syndrome, depression, high blood pressure and a learning disability. (R.11,89-91,252.) Finding that he did not have a "severe" [2] impairment before the expiration of his insured status, [3] the plaintiff's DIB application was administratively denied, both initially and on reconsideration. (R.11,19-21,59-61,62-64,66-68,71-75,265-266,267-268.) The plaintiff was, however, found to be have established a severe impairment as of April 14, 2005, a little more than a one year after expiration of his insured status, and found to qualify for supplemental security income ("SSI") as of July 12, 2007. (R.40-50,84-91.)

---

[2] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[3] Pursuant to the agency's regulations, the plaintiff must prove he became disabled on or before his date last insured in order to establish a DIB claim. 20 C.F.R. § 404.141; *Johnson v. Barnhart*, 434 F.3d 650, 655-656 (4th Cir. 2005). In this case the plaintiff's last insured date is 03/31/2004. (R12,14,82,306,333,337,397.)

2

Pursuant to the plaintiff's request a hearing was held on his DIB application before and administrative law judge ("ALJ") on January 31, 2008. (R.11,23,25034,51-52,58,70,264,395.) The plaintiff was present; he and his sister Therese Burchett testified, and he was represented by counsel. (R.395-431,61,65.) In his consideration of the plaintiff's claim at the second decisional step,[4] the ALJ reviewed the record in detail, including *inter alia* the plaintiff's testimony and that of his sister concerning his longstanding cognitive difficulties and the fact that his past employment was limited to work of a sheltered nature. After doing so, the ALJ concluded that the dearth of medical evidence at or near the time the plaintiff's insured status expired compelled a finding that the plaintiff's symptoms were not severe during the relevant time period.[5] (R.14-17.) Speaking about this adverse finding, the ALJ observed, "It would be speculative to find otherwise based on the record before me." (R.17.)

After the Appeals Council declined to review the ALJ's decision (R.5-15), the plaintiff's instituted this appeal.

II.     **Evidence and Analysis**

---

[4] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider: whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1; (4) has an impairment which prevents past relevant work; and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §.404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

[5] The plaintiff submitted no diagnostic, treatment, or other medical records pertaining to his mental or physical condition either before or during the period relevant to his DIB claim. (R.17,22.)

3

At the time his insured status expired, the plaintiff was forty-six years of age. (R.14,294,415.) He attended school through the 12th grade in Maryland. (R.227,256,368,409.) Based on the testimony of the plaintiff's sister, the ALJ concluded that the plaintiff's past work had been generally of a sheltered nature, should not be considered substantial gainful activity, and was not vocationally relevant. (R.14,400-404,429.)

### A.

Outlining his own medical history, the plaintiff reported a plethora of physical injuries since childhood, including several closed head injuries, the most recent of which were in 2001 and in the Spring of 2005. (R.218-225,305,317,329.) There is, however, no indication in the record that he ever sought treatment for the decisionally relevant head injury received in the 2001 skiing incident. (*See* R.22,218,254-255,260-261,285,417.) At the administrative hearing, the plaintiff also outlined a history of chronic anxiety, depression, and difficulty dealing with others. (R.417,422,427.)

According to the plaintiff's sister, Therese Burchett, the plaintiff required special education assistance in school,[6] in the past had been able to perform only work of a sheltered nature, and had lifelong learning difficulties which she attributed to their mother's active alcoholism during the time she was pregnant with the plaintiff.[7] (R.16,101-102,103-104,399-411.) On the plaintiff's behalf, supportive written "testimony" from the plaintiff's step-mother (R.94-95,231-232, 237-238) and

---

[6] As the ALJ also noted in his decision, "[I]t is not clear from [the plaintiff's school records (R.227-229)] whether or not this was special education." (R.16; *see also* R.256.)

[7] As the ALJ noted in his decision, "[T]his impairment, [however], is not diagnosed in the medical or scholastic records . . . ."

4

from his siblings (R.96-104) concerning both his mother's history of alcohol addiction and his life-long cognitive, social, and emotional difficulties. Similarly supportive written statements from several social workers (R.233-235,239-241) were submitted attesting to their observations about the plaintiff's current comprehensive, cognitive, and emotional limitations. In addition, Ms. Burchett submitted miscellaneous notes pertaining to her efforts to assist the plaintiff (R.105-114) and miscellaneous articles dealing with the nature of both fetal alcohol syndrome (R.115-198) and learning disabilities (R.199-216).

Dated April 14, 2005, more than one year after expiration of his insured status, the earliest treatment record submitted in support of the plaintiff's application documents his outpatient treatment for a minor head laceration. (R.385-393.) A diagnostic CT scan taken at that time confirmed the absence of any resulting brain abnormality. (R.388.)

The plaintiff's medical records show that he underwent a full evaluation of his current neuropsychological condition at WWRC [8] in August 2005. (R.366-372,374-384.) They show that he had a colon polyp surgically excised in October of the same year at UVaMC. [9] (R.350-365.) And they show that he was seen by a primary care physician [10] on seven occasions between September 28, 2007 and February 27, 2008 for several transient medical problems and for the pharmacologic

---

[8] Woodrow Wilson Rehabilitation Center, Fishersville, Virginia.

[9] University of Virginia Medical Center, Charlottesville, Virginia.

[10] Mt. Jackson Family Health Center, Mt. Jackson, Virginia.

5

management of his depression and high blood pressure (R.293-304). The record contains no other or additional examination or treatment information.

As part of the agency's consideration of the plaintiff's claims, state agency psychiatric reviews of the administrative record and attendant functional capacity assessments in January and October 2006 concluded that the plaintiff currently suffered from a cognitive disorder and a major depressive disorder; however, he nevertheless retained the capability to meet the basic mental demands of simple, routine work. (R.307-330,333-349.)

B.

Quoting in detail from the impassioned testimony and statements of Ms. Burchett and other family members concerning the lifelong and debilitating nature of the plaintiff's mental problems, the plaintiff argues they represent a context from which the ALJ should have inferred that the plaintiff's mental health conditions identified by the neuropsychological evaluation [11] in August 2005 and by the state agency psychiatric reviews [12] in 2006 existed before expiration of his insured

---

[11] Although the examining WWRC psychiatrist in August 2005 noted that there was a "possibility, if not a probability" the plaintiff had a history of fetal alcohol syndrome, no such diagnosis was in fact made. (R.371.) The examining psychiatrist also noted that the plaintiff's cognitive deficits might be related to a reported head injury; however, he related it to an injury sustained by the plaintiff in the Spring of 2005, more than one year after the expiration of his insured status, when a bolt cutter fell on his head (R.368,371,392), and he described the plaintiff's experience with depression to be "longstanding" and to be of a "mild to moderate" nature (R.371).

[12] Based on their reviews of the administrative record, including the results of the previous year's WWRC neuropsychiatric evaluation and the "3rd Party reports" regarding the plaintiff's current symptoms, the state agency psychological reviewers in 2006 concluded that the plaintiff was at that time suffering from a functionally significant cognitive disorders and a major depressive disorder with an attendant lesser dysthymic disorder. (R.307-330.) In contrast, the medical record was also found by the reviewing psychologist to be "insufficient to allow for a adjudication" prior to the expiration of the plaintiff's insured status on March 31, 2004. (R.306.)

6

status. If so, the plaintiff argues, the identified conditions were "severe" on or before the expiration of his insured status, and the ALJ erred in failing so to find at step-two of the sequential decisional process.

As viscerally compelling as the plaintiff's argument may be, it fails to recognize that lay testimony concerning and individual's symptoms [13] is non-medical evidence and, therefore, may not serve as the basis for a disability finding. *See* 20 C.F.R. §§ 404.1528(b) and 404.1529(a); Social Security Ruling ("SSR") 96-8p.

In determining eligibility for DIB where there is a lack of detail in the medical record, a treating physician's retrospective diagnoses or opinions concerning the past extent of an individual's pre-existing impairment along with corroborating lay testimony can be properly used to establish a disability onset date. *McLendon v. Barnhart*, 184 Fed. Appx. 430, 431-4323 (5th Cir 2006); *Jones v. Chater*, 65 F.3$^d$ 102, 103-104 (8th Cir. 1995); *see also Wilkins v. Secretary*, 953 F.2$^d$ 93, 96 (4th Cir. 1991). In the plaintiff's case now before the court, however, the problem is not the lack of medical record detail; it is the total and complete absence of any medical evidence prior to April 2005, along with the attendant absence of any retrospective medical opinion relating to the relevant period prior to the expiration of the plaintiff's insured status.

---

[13] As generally defined, a symptom is "any subjective evidence of disease or of a patient's condition indicative of some bodily or mental state." *Dorland's Illustrated Medical Dictionary*, p. 1085 (30th ed. 2003). Similarly, the agency's regulations define a symptom as the individual's "own description of [his or her] physical or mental impairment" and that such **"statements alone are not enough to establish that there is a physical or mental impairment."** 20 C.F.R. § 404.1528(a) (emphasis added).

7

Moreover, lay testimony is neither an acceptable medical source [14] nor is it a permitted evidentiary substitute for the "medically acceptable clinical and laboratory diagnostic techniques" required by the agency's regulations. 20 C.F.R. § 404.1527(a); *Hall v. Secretary*, 602 F.2d 1372, 1377 (9th Cir. 1979).

The ALJ was, therefore, fully justified in concluding at the second sequential step that the plaintiff had not established a "severe" impairment within the meaning of the Act and applicable regulations. He was, therefore, under no decisional obligation to consider the other functional ability criteria. It was the plaintiff's obligation to establish by objective medical evidence [15] that he suffered from a severe impairment during the decisionally relevant time period pursuant to the requirements of 20 C.F.R. § 404.1520(c). As the ALJ observed in his decision, "despite the efforts of the [plaintiff's] sister Therese and his attorney," the [plaintiff] has not been able to satisfactorily produce such evidence." Therefore, the findings of the ALJ are supported by substantial evidence and cannot be overturned by this court. [16]

### III.     Proposed Findings of Fact

---

[14] "Acceptable medical sources" is defined in 20 C.F.R. § 404.1513.

[15] "Objective medical evidence" means medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c).

[16] The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589) (4th Cir. 1996). *See* 20 C.F.R. § 404.1520(a)(b).

8

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. Substantial evidence supports the finding that during the decisionally relevant time before expiration of his insured status the evidence does not establish a "severe" impairment within the meaning of the Act;

3. The plaintiff has failed to meet his burden of proving at the second sequential decisional step that he had a "severe" impairment prior to the expiration of his insured status;

4. The plaintiff has not met his burden of proving his disability; and

5. The final decision of the Commissioner should be affirmed.

### IV. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

### VIII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 10th day of August 2009.

/s/ *James G. Welsh*
United States Magistrate Judge